IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RICHARD JOSEPH PERKINS,**

        **Petitioner,**

v.                                          **Civil Action No. 1:06-CV-148**
                                            **Criminal Action No. 1:05CR76**
                                            **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**OPINION/REPORT AND RECOMMENDATION**

On October 2, 2006, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. The United States filed a response to the petition on January 8, 2007. This case is before the undersigned for a preliminary review and report and recommendation pursuant to LR PL P 83.01, et seq., and Standing Order No. 4.

**I. Procedural History**

**A.**      **Conviction and Sentence**

On July 28, 2005, the petitioner signed a plea agreement by which he agreed to plead guilty to Count One of the indictment, possessing an unregistered firearm, in violation of Title 26, United States Code, Sections 5861(d)(1) and 5871. See Plea Agreement (dckt. 8) at ¶ 1. In the plea agreement, both parties stipulated that on or about December 4, 2004, at or near Grant Town, Marion County, West Virginia, the defendant knowingly possessed a firearm not registered to him in the National Firearms Registration and Transfer Record. In addition, the petitioner's plea agreement contained the following language regarding waiver:

12. The above paragraph notwithstanding, the defendant will retain his appellate rights with respect to any sentence imposed above the applicable Guideline range at an adjusted offense level of 27 or higher.[1] The United States retains its right to appeal any sentence imposed. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned the aforementioned adjusted Guideline offense levels.

On November 12, 2005, the petitioner entered his plea in open court. Petitioner was 34 years old with a tenth grade education (Plea transcript p. 4) The Court specifically asked if petitioner understood the waiver of appellate and post-conviction relief rights[2]. (Id. at 25,60) The Court asked

---

[1] Petitioner was sentenced at an Adjusted Offense Level of 22 and a Total Offense Level of 19.

[2] At the Rule 11 hearing, the Court stated the following:

> THE COURT: Okay. The important thing here is if you get a twenty six or lower which is what paragraph four talks about, that's what everybody expects your sentence–your adjusted offense level is going to be, then you are giving up your right to appeal. You are giving up your right to get to a higher court and say Judge Keeley made a mistake in my case and she gave me too long a sentence and I want to you to take a look at it and send it back to her and tell her to change it. Okay?

Plea transcript p. 24-25

Additionally, at the sentencing hearing, the Court stated the following:

> THE COURT: All right. Now, under the terms of your plea agreement, you waived or gave up your right to appeal any sentence at the adjusted offense level of 27 or higher. Sorry, it would be-no you're giving up your right to appeal any sentence 26 or lower and the United States, I am sure is going to argue that you're within that range and you are so, therefore I want to make sure that you know that you have given up

petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights. (Id.) Petitioner stated that he understood and agreed with all of the terms and conditions of the plea agreement. (Id. at 25-26)   The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 27-29)   During the plea hearing, the Government presented the testimony of William Berkeley Kcraget, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives to establish a factual basis for the plea. (Id. at 30-32) The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count One of the indictment. (Id. at 34)  The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.at 37).  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.) The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 37-38) Finally, petitioner stated he was in fact guilty of the crime to which he was pleading guilty (Id).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty; and that the elements of the crime were established beyond a reasonable doubt. (Id. at38-39) The petitioner did not object to the Court's finding.

---

> your right of appeal and *also your right to file a habeas petition*. However, if you think you have some issue that you have reserved, you can file a notice of appeal within ten days in writing following the entry of your judgment order.

Plea transcript p. 60 (emphasis added).

On December 7, 2005, the petitioner appeared before the Court where he received a sentence of 63 months imprisonment and three years supervised release.

**B.** **Appeal**

The petitioner did not pursue a direct appeal.

**C.** **Federal Habeas Corpus**

In his federal habeas petition, the petitioner raises the following grounds for relief:

(1) Ineffective assistance of counsel for

(a) failing to properly or thoroughly investigate the case and interview witnesses, especially concerning the petitioner's classification as a career offender; and

(B) failing to correctly and definitively outline and explain the full consequences of the crime, the charges and the penalty that he faced, and instead, telling the petitioner that he was likely to receive a high and strict sentence,

## II. Analysis

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar at 731. The

4

Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For instance, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in United States v. Lemaster, supra, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Lemaster, 403 F.3d at 732 (it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were

5

conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations").

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted). In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

Here, the undersigned finds that the petitioner knowingly and intelligently waived his appeal and collateral attack rights. At both the Rule 11 and sentencing hearing, the Court specifically addressed the issue of the waiver with the petitioner. At both proceedings, petitioner stated affirmatively that he understood the waiver. Additionally, petitioner stated that he had conferred with counsel regarding the waiver before signing the plea agreement. Moreover, all of the petitioner's claims arise prior to sentencing. Thus, the claims raised in the instant petition are all

6

barred by the valid waiver contained in the plea agreement.

### III. Recommendation

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be **DENIED** and **DISMISSED** from the Court's active docket because the petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the conviction.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 23, 2008.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE